## Case No. 7,401.

JOHNSON v. ONION et al.

[3 Hughes, 290; [1] 4 Fish. Pat. Cas. 170; 3 Am. Law T. 285.]

Circuit Court, D. Maryland. April, 1870.

R. Mason, Wm. Pinkney Whyte, and Chas. M. Keller, for complainant.

F. Nevitt Steele and F. H. B. Latrobe, for defendants.

GILES, District Judge. The bill is filed in this cause for an injunction and an account, etc. It sets forth that on the 15th May, 1855, Jacob A. Conover, a citizen of the United States, obtained letters patent of the United States, granting to him for the term of four-

[1] [Reported by Hon. Robert W. Hughes, District Judge, and by Samuel S. Fisher, Esq., and here compiled and reprinted by permission. The syllabus and opinion are from 3 Hughes, 290, and the statement is from 4 Fish. Pat. Cas. 170.]

teen years the full and exclusive right of making, etc., the invention and improvement set forth and described in the specifications annexed to said patent, and that by assignments duly executed and recorded, all the rights under said patent in and for the state of Maryland have become vested in the complainant, and that he has full authority to sue for and recover for all infringements thereof in the state. That the said patent has been sustained as a valid patent in several suits in New York; one, a suit at law for damages brought by the patentee against one John H. Rapp, in which Conover recovered a verdict, and in which suit it was determined that Conover was the first and original inventor of the improved wood-splitting machine described in said patent. That said patentee subsequently obtained an injunction against John R. Dohrman and John H. Peipho, to restrain them from infringing said patent. And by the supplemental bill, it appears that since the filing of the original bill in this cause the term of fourteen years for which the said patent was granted has expired; and that the commissioner of patents, upon due application made, and a hearing before him, granted an extension of said patent for seven years; and that since the said extension the said patentee has duly assigned to complainant the same rights which he, complainant, held under the original patent in and for this state.

The answer sets up several defences: 1st. They deny that Conover was the first and original inventor of the machine described in his patent. 2d. That the verdict of Conover v. Rapp [Case No. 3.124] was a collusive one; that the principal question discussed by Judge Shipman, in the case against Dohrman & Peipho was the question of infringement; and they also, to show that Conover was not the first and original inventor of the machine described in his patent, gave notice of several patents previously granted, which they will rely on in the trial of this case. During this litigation, as I have before stated, the patent expired and the extension was granted; and in the answer of the defendants to the amended and supplemental bill, the defence set up is that the extension of the said patent is void, as the application for the same was not filed ninety days before the expiration of the said patent.

Now, the first question that presents itself in the consideration of this cause is, was the extension of the patent by the commissioner legally granted? or, in other words, was the application for the extension filed "at least ninety days before the expiration of the patent?" Upon this question I have had no difficulty. The patent expired on the last hour of the 15th May, 1869, and the application for the extension was filed on the 15th February, 1869. The day on which the application is filed is included, and you have therefore ninety days before the expiration of the patent. In support of the propriety of counting the day upon which the application is filed in the calculation of the ninety days, I refer to the cases of Griffith v. Bogerts, 18 How. [59 U. S.] 163; Sheets v. Selden's Lessee, 2 Wall. [69 U. S.] 190; State v. Schnierle, 5 Rich. Law. 299; Thomas v. Affick, 16 Pa. St. 14; Chiles v. Smith, 13 B. Mon. 461. In [Griffith v. Bogerts] 18 How. [59 U. S.] 165, the supreme court say: "Where the construction of the language is doubtful, courts will always prefer that which will confirm rather than destroy any bona fide transaction or title." It is clear to me, therefore, that this application for extension of the letters was in time, under the act of 1861, § 12 [12 Stat. 248].

The next question is, what is the true construction of Conover's patent? He makes three claims; they are all for combinations. He does not claim, as new, any of the constituent elements of his combinations. His first claim is in these words: "What I claim as my invention, and desire to secure by letters patent, is the movable bed or carriage for carrying and advancing the blocks of wood in combination with the reciprocating cutters operating at right angles with the surface of the bed or carriage, substantially as and for the purpose specified."

Now the counsel for the defendants contend that the movable bed or carriage, named in said claim, can only mean a movable bed with flanges on the side, as described in said patent. It is true that Judge Hall, in his able charge to the jury in the case of Conover v. Roach [Case No. 3,125], held that it meant a movable bed or carriage as described in patentee's specifications—that is, having flanges on its side to keep the wood firm and in place. Judge Ingersoll does not touch this question in his decision in the case of Conover v. Rapp [supra], and in that case there does not appear to have been any argument made upon the flanges at all. Judge Shipman is very clear in his construction of the patent in the case against Dohrman & Peipho. He says: "The construction and operation of the machine described in the patent are substantially as follows: a bed or carriage composed of sections, linked together in the form of an endless chain, which is made to travel over a table and around drivers or wheels placed at each end. Blocks of wood of required length of material for fuel are placed upright on this bed. Over the bed, at the point where the block is to receive the blow which splits it, is a cutter, made in the form of a cross, so that the block may be split into small sticks instead of slabs or boards, as would be the case if the cutter was composed of only one straight blade. The bed, with the block thereon, is put in motion by an intermittent feed, and the block advanced under the cutter at every throw of the feed mechanism, measured by the range at which the feed mechanism is set. The cutter firmly fastened above to a stock, as the block passes

under it, works up and down with a reciprocating motion, splitting the block as it descends, and then raising from it so that it may be carried by the bed a step forward, when it descends and splits again. As the blades of the cutter rise they are cleared of any pieces of wood that may be clinging to them, by a clearing plate fixed above, and into which the cutter plays freely as it rises or falls through apertures or mortices in the plate. When the machine is in motion the bed not only carries the blocks to the point where they are split by the cutters, but it also carries off the wood after it is split." It must be seen that he says nothing about flanges. I incline to the construction which claims a movable bed, with or without flanges. While in his specifications the patentee describes his movable bed with flanges, yet he assigns to them no specific function. Other parts have their functions assigned, but these flanges have not. No doubt the bed is better with the flanges, and that may be his preferred mode of making it, but it is no part of his patent. Had it been intended by him to make the flanges a part of his patent he would have referred to them and made them a part of his claims. But he makes no mention of the flanges in his several claims at the close of his specifications, his claim being only "for the movable bed or carriage for carrying and advancing the block of wood in combination," etc. But the wood is held under the knives by the clearing plate as described in the patent. I should therefore think that if the wood could be split without the flanges, and I see no reason why it could not, the flanges were not essential parts of the Conover patent, although they would no doubt be an improvement on it. I admit this is a doubtful point, but it makes no difficulty in this case, because I hold that the machine used by the defendants is an infringement of the plaintiff's patent even in this particular. In this case the machine used by the defendants, represented in the model J. H. J., No. 6, clearly infringes the Conover patent. Never was there a clearer case of infringement. Here is the movable bed or carriage, substantially the same as that described in the patent, the reciprocating cutters operating at right angles with the surface of the bed or carriage substantially as described in the patent, and these devices operate substantially in the same way as described in the patent. In the machines of the defendants, as it is alleged they are now used, the outside slab or bar of wood has been removed, and a V knife is used instead of a knife cruciform in shape, but in my opinion the machine so modified would have in substance the same means of supporting the blocks laterally, as the machine described in the patent, for the slab or inner bar of wood, next to the frame, affords the effective lateral support to the block of wood at the moment when such support is most needed. The proof, however, shows that the outer side or slab of wood was upon the machines when this bill was filed, but I hold that, with or without the sides, it is a clear infringement to use such a machine. Nor is it necessary to resort to the doctrine of equivalents in this case, for the matter is too clear for dispute. See Winans v. Denmead, 15 How. [56 U. S.] 342.

It is maintained also by the counsel for the defendants that George Page invented and made a machine which antedates the Conover patent.